1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JUNE RIDDICK; PATRICIA HARDY;              No.  2:12-cv-02033-KJM-AC
     NATALIE MADEROS; VALERIE
12   LYNN; and LISA VALES,

13                  Plaintiffs,                 ORDER

14          v.

15   AT&T; YP WESTERN DIRECTORY
     LLC,
16
                    Defendants.
17

18

19

20          Four former employees bring claims for age and sex discrimination against a

21   phone book company based on the company's decision to relocate their positions and then not

22   hire them for other open positions.  Two motions are before the court.  The phone book company,

23   YP Western Directory LLC ("YP"), moves for summary judgment on all claims.  YP Mot., ECF

24   No. 100.  The four former employees move for sanctions against YP for allegedly withholding

25   documents during discovery.  Pls.' Mot., ECF No. 111.  The parties oppose each other's motions.

26   Pls.' Opp'n, ECF No. 109; YP Opp'n, ECF No. 114.  The court heard YP's summary judgment

27   motion on January 27, 2017, and plaintiffs' sanctions motion on February 24, 2017.  ECF

28   Nos. 113, 116.  For the following reasons, the court DENIES both motions.

                                                 1

1    I.      PROCEDURAL BACKGROUND

2            Plaintiffs Patricia Hardy, Valerie Lynn, Natalie Maderos, June Riddick, and Lisa

3    Vales filed this action against AT&T on August 2, 2012.  Compl., ECF No. 1.  Plaintiffs filed a

4    first amended complaint on December 18, 2012, adding YP Western Directory LLC ("YP") as a

5    defendant.  First Am. Compl. (FAC), ECF No. 11.  After YP answered the first amended

6    complaint, ECF No. 19, the parties voluntarily dismissed AT&T Inc. (erroneously sued as

7    "AT&T") from this case, ECF Nos. 65–67.   YP and Vales settled, and Vales was dismissed from

8    the case on March 15, 2017.  ECF Nos. 107, 118.  The instant motions pertain only to the four

9    remaining plaintiffs and YP.

10           YP moved for summary judgment on December 30, 2016, YP Mot., and plaintiffs

11   moved for sanctions on January 21, 2017, Pls.' Mot.  Both parties filed oppositions and replies.

12   Pls.' Opp'n; YP Opp'n; YP Reply, ECF No. 110; Pls.' Reply, ECF No. 115.  The court first

13   addresses YP's motion for summary judgment.

14   II.     FACTUAL BACKGROUND

15           When considering a motion for summary judgment, the court relies on whatever

16   facts are undisputed and otherwise considers the evidentiary record in the light most favorable to

17   the party opposing the motion.  *See, e.g.*, *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*,

18   815 F.3d 1195, 1202 (9th Cir. 2016).  The following facts are not disputed unless otherwise

19   noted.

20           A.      Plaintiffs' Employment with YP

21           Hardy, Lynn, Maderos and Riddick all were employed by Pacific Bell Directory

22   ("PBD"), a California corporation and then subsidiary of AT&T that subsequently changed its

23   name to YP Western Directory LLC.[1]  Def.'s Statement of Undisputed Facts (SUF) 1, ECF

24   No. 101; Kristiansen Decl. 3, ECF No. 100-10.  YP was in the business of selling ads in, and

25   publishing, the familiar Yellow Pages telephone directories and their companion website, yp.com.

26   SUF 2.  Each plaintiff last worked as an Advertising Support Associate ("ASA"), a clerical

27   _____

28          [1] For simplicity, this order refers to Pacific Bell Directory and YP Western Directory LLC
     collectively as "YP" unless it is necessary to distinguish between the two entities.

2

position within YP's publishing unit.  SUF 3.  Plaintiffs worked from various YP offices in Northern California.  SUF 5; Strass Decl. Ex. B (ASAs Spreadsheet), ECF No. 100-9 at 3–18.

B.    YP's Relocation

In or about 2009 or 2010, YP's Vice President of Publishing Operations, Henry Arnold, made a companywide decision to consolidate all ASAs nationwide, including functionally equivalent positions with a different title, to centralized locations in each region. SUF 5; Arnold Dep. 9–10, ECF No. 100-2 at 5–6.  Arnold made the final decision to relocate all California ASAs to Anaheim.  SUF 16; Arnold Dep. 9–10.

YP notified its California ASAs of this relocation in letters dated July 12 and July 21, 2010.  SUF 8.  YP gave each ASA the option to relocate with their consolidated positions or else find another position at YP by September 30, 2010.  SUF 9–12.  YP gave relocation packages, including travel and housing assistance, to those who followed their jobs.  SUF 10.  If a non-relocating ASA could not secure a new job at YP by September 30, 2010, she was separated on that date.  SUF 12.

YP's decision to relocate affected a total of forty-four ASA employees. Kristiansen Dep. 399, 401.  As a group, the affected ASAs' average age was 50.20 and their average net credited services ("NCS"), a measure of seniority, was 20.68 years.  Pairavi Decl. ¶¶ 7–8, ECF No. 109-15.  The ASAs that relocated were younger and significantly less experienced than the ASA pool at large, with an average age of 47 and average NCS of 13.79.  Opp'n 13; Pairavi Decl. Ex. N5; YP Reply 7.  And YP did not fill a majority of the vacated ASA positions after the relocation.  Kristiansen Dep. 399, 401, ECF No. 109.  Thus, after the consolidation, YP employed fewer ASAs, which was a position largely occupied by older employees.  In addition, it was younger employees who managed to relocate, leave the older ASAs behind.

C.    Plaintiffs Denied Applications for Employment

As noted above, YP gave ASAs who chose to relocate from the date of their July 12 or 21, 2010 notification date until the September 30, 2010 separation date to find another position within YP.  SUF 8, 12.  Each plaintiff chose not to relocate to Anaheim and unsuccessfully applied to other open positions.  Plaintiffs focus their discrimination claims on

3

their unsuccessful applications for three positions, discussed in turn below. *See* Pls.' Opp'n 16–25.

### 1.    Directory Sale Representatives ("Tel Reps")

In September 2010, YP posted twelve vacancies for the position of Directory Sale Representatives ("Tel Reps") in Pleasanton, California. Lynn Decl. ¶ 37, Ex. L11 (Tel Reps Listing), ECF No. 109-13. All four plaintiffs applied but were not hired for the Tel Rep positions. Hardy Decl. ¶ 31, ECF No. 109-12; Lynn Decl. ¶ 37, ECF No. 109-13; Maderos Decl. ¶ 31, ECF No. 109-14; Riddick Decl. ¶ 60, ECF No. 109-11. Plaintiffs were qualified for the position and were all over the age of forty at the time. YP Mot. 22–23; Hardy Decl. ¶¶ 4–12, Lynn Decl. ¶¶ 4-8; Maderos Decl. ¶¶ 4–7; Riddick Decl. ¶¶ 5–17.

YP filled the twelve vacancies by October 25, 2010, after the plaintiffs' separation from YP on September 30, 2010. SUF 68. The average age of the twelve Tel Rep hires was 42.92, while plaintiffs' average age was 51.75; the median age of the Tel Rep hires was 45.5, while plaintiffs' median age was 48. SUF 70; Pls.' Opp'n 17; YP Reply 11–12; Simpson Decl., Ex. 14-D, ECF No. 100-15. Thus, the hired Tel Reps were, on average, approximately nine years younger than plaintiffs. Also, eleven of the twelve Tel Reps were "new hires," despite a general hiring policy of "look[ing] at internal candidates first." Simpson Decl., Ex. 14-D; Kristiansen Dep. 98, ECF No. 109-6.

### 2.    Area Sales & Operations Manager ("ASOM")

In September 2010, YP posted a vacancy for the position of Area Sales and Operations Manager ("ASOM") in Pleasanton, California. Hardy Decl. ¶ 30; Riddick Decl. ¶ 58. Hardy and Riddick each applied for the position. *Id.* Each was over the age of forty. Hardy Decl. ¶ 4; Riddick Decl. ¶ 4.

Hardy and Riddick both had significant YP management experience. Hardy had thirty-nine years' experience with YP, had previously held a substantially similar job with YP for eleven years, and had received fifty-two awards in that role. Hardy Decl. ¶¶ 6, 35. Riddick had approximately twenty-four years' experience with YP and five years' management experience. Riddick Decl. ¶¶ 5–17. After Hardy submitted her application and passed the initial stage of the

4

recruiting process, YP cancelled the position. Kristiansen Dep. 72; Bis Decl., Ex. A (Cancelled ASOM Listing), ECF No. 100-13.

Soon after the ASOM position was cancelled, YP selected a sales manager to act as an ASOM on an interim basis. SUF 53; Kristiansen Dep. 90. In January 2011, YP hired Scott MacDonald, a younger male, for the ASOM position. SUF 54; YP Mot. 20. YP made MacDonald's position permanent on May 1, 2012, and MacDonald held the position until August 4, 2013. Kristiansen Dep. 91–92. At the time of his initial hiring, MacDonald had approximately eight years of experience with YP, most recently as an Area Sales Manager – Telephone (2009–2010) and Area Sales Manager – Internet (2005–2007). Bis Decl., Ex. B (MacDonald Resume).

### 3. Area Sales Manager ("ASM")

YP had three vacancies for the Area Sales Manager ("ASM") position in Pleasanton, California. Kristiansen Dep. 107; Lynn Decl., Ex. L9 (ASM Listing), ECF No. 109-13. Lynn applied for the ASM position. Lynn Decl. ¶¶ 29–33. She was forty-five years old at the time. *Id.* ¶ 4. Lynn had the basic qualifications for the position. Kristiansen Dep. 105, ECF No. 109-6. She had eighteen years of experience with YP, including six years in a managerial role. Lynn Decl. ¶¶ 4–8. YP deemed Lynn's experience as a Market Manager for Competitive Local Exchange Carriers (CLEC) most relevant to her application. Kristiansen Dep. 112; Lynn Decl., Ex. L1 (Lynn Resume), ECF No. 109-13. Although YP invited Lynn to interview with Bruce Bis for the position, and she did interview, she was not selected. Kristiansen Dep. 105; Lynn Decl. ¶¶ 29–33. YP filled all three ASM vacancies with candidates that were younger or male: Robert Levin (male); Luis Pantoja (male, 37); and Shauna Emery (female, 36). Kristiansen Dep. 770–71. The parties dispute whether these hires were more qualified than Lynn.

### 4. Discriminatory Comments

Plaintiffs base their discrimination claims in part on the comments of Larry Lacko, who managed YP's staffing department and recruited employees for at least two of the positions at issue. Kristiansen Dep. 100; Bis Decl., Ex. A (ASOM Listing) (listing Lacko as recruiter); Lynn Decl., Ex. L5 (ASM Application) (same), ECF No. 109-13. According to YP, a recruiter

may initially screen applications, work with the hiring manager to select candidates for interviews, and inform the applicants of YP's final decision. Kristiansen Dep. 55. As Riddick avers, Larry Lacko told her in 2009 that "we want younger workers" who, in his opinion, were the "best of the best," and that "we are not looking for women because women were [sic] not fit for the job." Riddick Decl. ¶ 21.

### D.   Plaintiffs' Claims

Based on these facts, plaintiffs bring two claims: (1) gender discrimination, violating California's Fair Employment and Housing Act (FEHA), Cal. Gov't Code §§ 12900–12996, and Title VII, 42 U.S.C. § 2000e–2–; and (2) age discrimination, violating FEHA and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–34  FAC ¶¶ 28–37.  YP moves for summary judgment on all claims.

### III.   MOTION FOR SUMMARY JUDGMENT

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[2]

The moving party bears the initial burden of showing the district court "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmovant, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[The

---

[2] Rule 56 was amended, effective December 1, 2010. However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56, Notes of Advisory Comm. on 2010 amendments.

nonmovant] must do more than simply show that there is some metaphysical doubt as to the material facts.").  Moreover, "the requirement is that there be no genuine issue of material fact . . . .  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48.

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

A court may consider evidence as long as it is "admissible at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).  "Admissibility at trial" depends not on the evidence's form, but on its content. *Block v. City of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at 324).  The party seeking admission of evidence "bears the burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002).  If the opposing party objects to the proposed evidence, the party seeking admission must direct the district court to "authenticating documents, deposition testimony bearing on attribution, hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in question could be deemed admissible . . . ." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–86 (9th Cir. 2010).  However, courts are sometimes "much more lenient" with the affidavits and documents of the party opposing summary judgment. *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979).

The Supreme Court has taken care to note that district courts should act "with caution in granting summary judgment," and have authority to "deny summary judgment in a case where there is reason to believe the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255.  A trial may be necessary "if the judge has doubt as to the wisdom of terminating the case before trial." *Gen. Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1507 (9th Cir. 1995) (quoting *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994)).  This may be

the case "even in the absence of a factual dispute." *Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*, No. 12-05847, 2015 WL 3826713, at *4 (N.D. Cal. June 19, 2015) (quoting *Black*, 22 F.3d at 572); *accord Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285 (11th Cir. 2001).

The court next addresses the parties' evidentiary objections.

IV.    EVIDENTIARY ISSUES

A.    Plaintiffs' Objection to Kristiansen Declaration

Plaintiffs object to a portion of the declaration of YP's Person Most Qualified (PMQ), Debi Kristiansen, as misstating prior testimony. *See* Kristiansen Decl.; Pls.' Obj. Kristiansen, ECF No. 109-16. The court need not reach this objection because Kristiansen's statements relate to a Supervisor's Assistant (SA) position, which is not considered here.

B.    Plaintiffs' Objection to Strass Declaration

Plaintiffs object to portions of the declaration of Human Resources Information Systems Analyst Tanya Strass, and corresponding exhibits. Strass generated data regarding YP's hiring of Customer Associates (CAs), Advertising Support Associates (ASAs) and Tel Reps. *See* Strass Decl., ECF No. 100-9; Pls.' Obj. Strass, ECF No. 109-19. Plaintiffs contend Strass lacks sufficient personal knowledge because she may not have personally retrieved the data. Pls.' Obj. Strass 2–3 (citing Def.'s Exs. 8A, 8B, 8C).

In her declaration, Strass explains "I generated these documents" and "the data was obtained from elink with the assistance of another Senior Data Analyst." Strass Decl. ¶ 4. Strass' declaration shows she is a qualified Human Resources employee, *id.* ¶¶ 1–2, she has pulled data from the elink system in the past, *id.*, and she is familiar with the information elink produces, *id.* ¶ 4. Strass does not specifically say another person obtained the elink data. The court finds Strass has sufficient firsthand knowledge to generate and analyze the exhibits attached to her declaration. The court OVERRULES plaintiffs' objection.

/////

/////

C.    Plaintiffs' Objection to Simpson Declaration

Plaintiffs object to portions of YP attorney[3] David B. Simpson's declaration, in which he sets out calculations of YP employees' mean and median ages.  *See* Simpson Decl. ¶¶ 3–12; Pls.' Obj. Simpson, ECF No. 109-18.  Plaintiffs argue Simpson's calculations lack foundation because they rely on data whose trustworthiness cannot be verified.  Pls.' Obj. Simpson 3 (citing Def.'s Exs. 8A, 8B, 8C, 9D, 9E).  As discussed above, YP has sufficiently established a foundation for Exhibits 8A, 8B, and 8C, all of which Strass produced.

Kristiansen's declaration supports the remaining exhibits.  Exhibit 9D is a spreadsheet of data regarding ASAs in California at the time of the 2010 Anaheim relocation.  Kristiansen Decl. ¶ 17. As Kristiansen declares, "I personally created this list from a spreadsheet of employee data I received from Michelle Abt in early 2010"; Kristiansen says she knows the data are correct because she was responsible for administering the relocation.  *Id.*  Abt in turn declares she pulled the underlying data from an electronic personnel record database, Centralized Employee Table Software (CENET), which she used in her role as a Human Resource Employee Relations Manager at AT&T Advertising Solutions.  Abt Decl. ¶¶ 3–4, ECF No. 100-16.  Exhibit 9E is a spreadsheet of data on ASAs YP hired in Anaheim in 2010 after the statewide notice of relocation.  Kristiansen Decl. ¶ 18.  Kristiansen obtained some of this data from YP's personnel database called ADP that stores employee information.  *Id.*  These custodians of records' declarations lay sufficient foundation for Exhibits 9D and 9E.  Thus, Simpson's calculations may rely on them.  Plaintiffs' other arguments—that Simpson's calculations of mean and median constitute improper lay witness testimony[4] and that Simpson's inclusion of plaintiff Vales in his

---

[3] As YP's attorney, Simpson has provided calculations of his own, which may merge his roles as advocate and witness.  *See* Simpson Decl. ¶ 3 (citing his credentials in economics and statistics).  Plaintiffs' attorney does the same.  *See* Pairavi Decl. ¶ 7–8.  If either attorney were to offer his testimony at trial, he may need to withdraw from his representation under the advocate-witness rule.  ABA Model Rule 3.7(a) ("A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness[.]").  At this stage, because the court finds it unlikely either attorney will need to act as witness at trial, withdrawal is unwarranted.  *United States v. Prantil*, 764 F.2d 548, 552–53 (9th Cir. 1985).

[4] Plaintiffs object that a lay witness cannot testify as to mean and median.  They are incorrect.  *See, e.g.*, *Trustees v. Smith-Emery Co., Inc.*, 906 F.Supp.2d 1043, 1069 n.30 (C.D. Cal.

1  calculations prior to her dismissal from this case was improper—lack merit.  The court

2  OVERRULES the objection.

3          D.      Plaintiffs' Motion to Strike Reyes and Abt Declarations

4          Plaintiffs move to strike Jennifer Reyes's and Michelle Abt's declarations under

5  Federal Rule of Civil Procedure 37, arguing YP did not disclose their identities before the close of

6  discovery as Federal Rule of Civil Procedure 26 requires.  *See* Reyes Decl., ECF No. 100-8; Abt

7  Decl., ECF No. 100-16; Pls.' Mot. Strike, ECF No. 109-17.  More specifically, plaintiffs argue

8  YP should have disclosed Reyes, the current Senior Quality M&P Process Manager for Talent

9  Acquisitions at AT&T Services, Inc., because she had access to the JOBS and Career Path

10  systems, which listed job openings for non-management and management positions, respectively;

11  these systems contained information responsive to plaintiffs' discovery requests.  Pls.' Mot.

12  Strike 4–6.  Plaintiffs argue YP should have disclosed Abt, who formerly worked as Human

13  Resource Employee Relations Manager at Southwestern Bell Yellow Pages, Inc., because Abt

14  gathered information at Kristiansen's request from another electronic personnel record database,

15  CENET, on which defendants rely.  Mot. Strike 6–7.

16          Plaintiffs provide no authority for the proposition that a party must disclose the

17  identity of a records custodian, such as Reyes or Abt, during discovery. Even if such disclosure

18  were required, plaintiffs have not justified exclusion under Rule 37.  *See* Fed. R. Civ. P. 37(c)(1)

19  (exclusion warranted unless nondisclosure "was substantially justified or is harmless"); *Lam v.*

20  *City and County of San Francisco*, 565 Fed. App'x 641, 643 (9th Cir. 2014) (nondisclosure of

21  witnesses used to authenticate documents was harmless); *Beauperthuy v. 24 Hour Fitness USA,*

22  *Inc.*, 772 F. Supp. 2d 1111, 1120 (N.D. Cal. 2011) (same).  This is especially true here, where

23  defendants gave plaintiffs the data underlying both declarations during discovery.  *See* Def.'s

24  Opp'n Mot. Strike 2–3, ECF No. 110-2 (citing Reyes Decl., Exs. A–O, Strass Decl., Ex. A).  The

25  court OVERRULES the objection.

26

27  2012) ("[A] lay witness can permissibly testify as to the proper amount of interest that is owed,
    for example, based on simple mathematical computation.").

28

1    E.    YP's Objections

2         YP objects to numerous portions of plaintiffs' and plaintiffs' counsel's

3    declarations.  Def.'s Objs. 1–18 (Objs. to Riddick Decl.), 19–35 (Objs. to Hardy Decl.), 36–55

4    (Objs. to Lynn Decl.), 56–65 (Objs. to Maderos Decl.), 66–69 (Objs. to Pairavi Decl.), ECF

5    No. 110-3.  In each instance, YP objects on grounds of hearsay or lack of personal knowledge.

6    *Id.* (citing Fed. R. Civ. P. 602, 801).  YP's hearsay objections are premature, because the court

7    may consider evidence so long as it is "admissible at trial," *Fraser*, 342 F.3d at 1036, which

8    depends not necessarily on the content of evidence, but its form, *Block*, 253 F.3d at 418-19, and

9    many of the statements may be presented in an admissible form later.  The court rejects YP's

10   personal knowledge objections as "redundant" and "unnecessary" because they merely restate the

11   summary judgment standard itself.  *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used

12   to support or oppose a motion must be made on personal knowledge . . . .");  *Patterson v. Reliance*

13   *Stand. Life Ins. Co.*, 986 F. Supp. 2d 1140, 1144 (C.D. Cal. 2013).  In any event, the court does

14   not rely on most of the allegedly objectionable statements.

15   V.    EMPLOYMENT DISCRIMINATION UNDER ADEA / TITLE VII / FEHA

16         Plaintiffs argue they suffered age discrimination when YP relocated plaintiffs'

17   positions to a central office, and both age and sex discrimination when YP did not hire plaintiffs

18   to fill the several positions for which they applied.  *See* FAC ¶¶ 1–27.  Plaintiffs claim YP's

19   discriminatory conduct violates ADEA, Title VII and FEHA.  *Id.* ¶¶ 28–37.  YP moves for

20   summary judgment on all claims.  *See generally* YP Mot.

21         The ADEA, Title VII and FEHA each prohibit age or sex discrimination.  The

22   ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual

23   or otherwise discriminate against any individual . . . because of such individual's age."

24   29 U.S.C.A. § 623(a)(1).  Title VII makes it unlawful for an employer "to fail or refuse to hire or

25   to discharge any individual . . . because of such individual's . . . sex . . . ."  42 U.S.C. § 2000e–

26   2(a)(1); *Frank v. United Airlines, Inc.*, 216 F.3d 845, 853 (9th Cir. 2000).  FEHA makes it

27   unlawful for an employer, "because of the . . . sex [or] . . . age . . . of any person, to refuse to hire

28   or employ . . . or to discharge the person from employment . . . ."  Cal. Gov't Code § 12940(a).

Courts analyze discrimination claims involving the ADEA, Title VII, and FEHA based on circumstantial evidence using the three-stage burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g., Diaz v. Eagle Produce Ltd. Partn.*, 521 F.3d 1201, 1207 (9th Cir. 2008) (burden-shifting framework applies to ADEA claims); *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (FEHA claims subject to same burden-shifting structure as a Title VII claim); *see also DeNeal v. Sanwa Bank*, 76 Fed. App'x 139, 140 (9th Cir. 2003) (where Bank employee failed to produce evidence showing reasons for not hiring were pretextual, summary judgment was appropriate under Title VII, FEHA, and ADEA). The employee must first establish a prima facie case of discrimination. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000). If the employee justifies a presumption of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action. *Id.* If the employer satisfies its burden, the employee must then prove the employer's reason is mere pretext for unlawful discrimination. *Id.*

"As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000). "[A] disparate treatment plaintiff can survive summary judgment without producing any evidence of discrimination beyond that constituting his prima facie case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons." *Fonseca v. Sysco Food Services of Arizona, Inc.*, 374 F.3d 840, 850 (9th Cir. 2004) (citing *Chuang*, 225 F.3d at 1127). To establish a prima facie case, the employee must show (1) she is a member of a protected class; (2) she was qualified for her position; (3) she experienced an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *Fonseca*, 374 F.3d at 847; *Peterson v. Hewlett–Packard Co.*, 358 F.3d 599, 604 (9th Cir. 2004); *Coleman*, 232 F.3d at 1281.

In their effort to mount a prima facie discrimination case, plaintiffs advance two principal theories.

## A. YP's Relocation Plan

First, plaintiffs cite YP's relocation of ASA positions to Anaheim as discriminatory conduct. The Ninth Circuit has addressed how a party can establish a prima facie case of discrimination based on "structural change" such as a general reduction in workforce. *Coleman*, 232 F.3d at 1281; *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir.1997). A plaintiff may not need to show she was replaced to raise an inference of discrimination. *Coleman*, 232 F.3d at 1281. Rather, she must show "through circumstantial, statistical, or direct evidence that the discharge occurred under circumstances giving rise to an inference of age discrimination." *Id.* (citing *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1421 (9th Cir. 1990)).. A plaintiff may establish this inference by showing, despite an employer's letting go of the employees, "the employer had a continuing need for [their] skills and services in that [their] various duties were still being performed." *Id.* (citing *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 891 (9th Cir. 1994)). Alternatively, a plaintiff can show "others not in her protected class were treated more favorably." *Id.* (citing *Washington v. Garrett*, 10 F.3d 1421, 1434 (9th Cir. 1993)).

Here, each plaintiff indisputably meets the first three requirements of a prima facie case of age discrimination. All four plaintiffs were (1) members of a protected class when YP consolidated, (2) were qualified for their current positions as ASAs, and (3) experienced an adverse employment action when they lost their ASA positions and ultimately their employment with YP. *See Fonseca*, 374 F.3d at 847. Only the fourth element, which requires circumstantial evidence of discrimination, is disputed. *Id.* Here, plaintiffs have shown a majority of vacated ASA positions were never filled. Kristiansen Dep. 399, 401. So YP's "relocation" may be treated as an indirect reduction in force and plaintiffs may rely on the Ninth Circuit's "structural change" cases to support this element. Plaintiffs point to three pieces of evidence in opposing summary judgment.

First, plaintiffs cite the change in demographics of the ASA population the relocation caused. To review, YP's decision affected forty-four ASA employees. Kristiansen

Dep. 399, 401. As a group, the affected ASAs' average age was 50.20 and their average net credited services ("NCS"), which is a measure of seniority, was 20.68. Pairavi Decl. ¶¶ 7–8. However, the ASAs that ultimately relocated were younger and significantly less experienced than the ASA pool at large, with an average age of 47 and an average NCS of 13.79. Pls.' Opp'n 13; Pairavi Decl. Ex. N5; YP Reply 7. In addition, YP did not fill a majority of the vacated ASA positions after the relocation. Kristiansen Dep. 399, 401. Thus, after the relocation, YP employed fewer ASAs, which was a position largely occupied by older employees. In addition, YP relocated the younger ASAs and left behind the older ASAs.

Second, plaintiffs cite YP decisions that made it difficult for ASAs, a relatively older, senior group of employees, to continue working for YP after the relocation. For example, although YP decided to consolidate the positons geographically in 2009, it only announced the decision in July 2010. SUF 5, 8. This delay gave employees only two months to decide whether to relocate or to attempt finding an alternative position at YP before the September 30, 2010 termination date. SUF 12; Riddick Decl. ¶ 34; Hardy Decl. ¶¶ 16, 23–24. Plaintiffs also contend YP's decision to declare a "consolidation," rather than a "surplus," relatively disfavored older employees. Riddick Decl. ¶ 32. In a "surplus" scenario, YP would lay off high-seniority employees last and any employee YP displaced would be entitled to a seniority-based preference for other open positions in the company's jobs bank. Kristiansen Dep. 65. YP's "consolidation," however, afforded neither benefit. Hardy Decl., Ex. K4 (July 12, 2010, Notice of Consolidation), ECF No. 109-12. Moreover, YP's selection of Anaheim as the centralized location made it difficult for many ASAs to relocate, in part because of the higher cost of living in Southern California. Riddick Decl. ¶ 35; Hardy Decl. ¶ 24; Maderos Decl. ¶¶ 13, 19. Taken together, YP took several steps that made it harder for older employees to stay employed with YP, and which a reasonable jury could find was designed to lead to a reduced number and average age of the ASAs after the relocation.

Third, plaintiffs cite YP's obvious and ongoing need for ASAs in the Northern California offices, despite the relocation, as evidence of discrimination. Before the relocation, YP shifted job responsibilities from ASAs to existing Customer Associates (CA), Lynn Decl.

14

¶¶ 24-25,[5] who were significantly younger than ASAs, Pairavi Decl. ¶ 8.  After the relocation, YP

had a continuing need for the skills and services of ASAs in Northern California.  Kristiansen

Dep. 38.  For example, Riddick was one of several ASAs who returned to work for YP, but as an

independent contractor.  Kristiansen Dep. 29; Riddick Decl. ¶¶ 42–44.  Riddick worked from the

same home office in Northern California and reported to the same manager as before the

relocation.  *Id.*  During this time, Riddick's manager, Elaine Tipping, encouraged CAs in the

office to learn from Riddick before the end of her brief stint as an independent contractor.

Riddick Decl. ¶ 48, Ex. J4, J5, ECF No. 109-11.  YP's "continuing need for [plaintiffs'] skills and

services" supports an inference of discrimination.  *Coleman*, 232 F.3d at 128.

        Taken together, plaintiffs' evidence is sufficient to infer age discrimination under

*McDonnell Douglass*'s fourth element.   Plaintiffs have met their burden of establishing a prima

facie case.  The burden therefore shifts to YP to provide a "legitimate nondiscriminatory reason"

for its decision to relocate the ASAs.

        YP argues it had a legitimate business reason to consolidate ASAs in regional

offices.  YP Mot. 10–13.  YP cites Vice President of Operations Henry Arnold's testimony to

argue centralization was necessary to address declining Yellow Pages directories sales and to

increase YP's efficiency and quality.  SUF 16, 18.  As Arnold explained at deposition:

> Having resources out in the various branches and having two, three,
> or four people in each branch creates a lot of inefficiency when
> there's [sic] peaks and valleys of work within those branches. And
> so by consolidating . . . the employees into one center, we were able
> to smooth out those peaks and valleys . . . we would need less
> overtime . . . as volumes declined, which they were, we were in a
> better position to adjust the staffing to the reduced volume of work.
> . . . In addition . . . we could get the work done in a more timely
> manner because once again, there weren't spikes where there was a
> backlog in [one] office . . . That work could be evenly spread across
> a broader cadre of team members . . . And also, because they were

---

[5] YP objects to Lynn's statements regarding YP's shifting responsibilities from ASAs to
CAs for lacking personal knowledge.  Def.'s Objs. 47, 49.  However, YP does not object to
Lynn's statement that she was asked to train CAs to perform ASA responsibilities.  *See* Def.'s
Obj. 47.  Lynn's receipt of the invitation to train CAs to perform ASA responsibilities provides
sufficient personal knowledge to support these statements.  *In re Mark Industries*, 161 F.3d 13
(9th Cir. 1998) (personal knowledge may be inferred from person's position and nature of her
participation in matters to which she swore).  The court overrules YP's objections.

all in one center, we were in a better position to monitor performance, manage performance, provide quality training, and therefore receive and achieve a higher quality as well.

SUF 18; Arnold Dep. at 11:2–12:6. Against the undisputed backdrop of declining directory sales, the court finds YP states a legitimate business reason for the consolidation.

Because YP has provided a legitimate business reason for its decision, the burden shifts back to plaintiffs to show the asserted reason is a mere pretext for discrimination. Plaintiffs argue YP's own data reveal the average age of new ASAs was younger than the total population of ASAs prior to the relocation. *See* Simpson Decl., Exs. 14A, 14B, ECF No. 100-15. As noted above, the average age of all forty-four ASAs at the time of relocation was 50.20, Pairavi Decl. ¶ 7, Ex. N5, ECF No. 109-15, whereas the average age of the new ASA population by November 1, 2010, was only 47.93, Simpson Decl., Ex. 14B. YP argues an average age difference of less than ten years is presumptively not discriminatory. YP Mot. 5 (citing *France v. Johnson*, 795 F.3d 1170, 1174 (9th Cir. 2015)). But plaintiffs do not rely solely on this evidence.[6]

Plaintiffs question the necessity of the relocation on at least two bases. First, in spite of the purported business sense of the relocation, YP laid off all Anaheim ASAs and ultimately shut down its Anaheim office no more than two years after the relocation. Kristiansen Dep. 684:1–3. Because YP made its initial relocation decision long before it notified its employees, it also is plausible that YP decided to shut down the Anaheim office long before it relocated ASAs to that office. A reasonable jury could conclude that the plan was not merely a poor business decision, viewed retrospectively, but a pretext for discrimination. Second, although YP refers to the consolidation as a "relocation," YP never filled a majority of the ASA positions left vacant. YP's plan assumed some employees would not make the move to Anaheim, and Arnold acknowledged that he knew, in making the relocation decision, YP would need fewer ASAs after the move. Arnold Dep. 24:20–25. This evidence too could persuade a reasonable jury that the consolidation was part of a broader and longer-term effort to remove YP's older

---

[6] YP argues the median age of the new ASA hires is most relevant. SUF 22; Simpson Decl. ¶ 5 (median age of new ASAs one year older than all ASAs prior to relocation). However, a reasonable juror could consider either the mean or the median in evaluating YP's decision.

employees.  Plaintiffs have shown a genuine issue of material fact regarding YP's proffered nondiscriminatory reason.  Summary judgment is not warranted on this basis.

      B.    <u>Failure to Hire</u>

Plaintiffs' second theory of discrimination involves YP's failure to hire each of them for several positions.  *See* FAC ¶¶ 1–27.  As with the first theory, to establish a prima facie discrimination case relying on this second theory, each plaintiff must show (1) she is a member of a protected class; (2) she was qualified for her new position; (3) she experienced an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.  *Fonseca*, 374 F.3d at 847; *Peterson*, 358 F.3d at 604.

Plaintiffs focus on three job positions: (1) Tel Rep (Hardy, Riddick, Maderos, Lynn); (2) ASOM (Hardy, Riddick); and (3) ASM (Lynn).  *See* Pls.' Opp'n 16–25.  The court discusses each position in turn.

      1.    <u>Tel Rep (Hardy, Lynn, Maderos, Riddick)</u>

Plaintiffs allege age discrimination for YP's failure to hire Hardy, Lynn, Maderos and Riddick for the position of Tel Rep.  *Id.* at 16–20.

It is undisputed that all four plaintiffs were over forty years old when they applied.  All four plaintiffs have testified that they applied for the position, but YP has no records of their application or rejection.  YP offers no evidence or argument to support a conclusion that any of the four plaintiffs was not qualified for the position.  Thus, plaintiffs satisfy the first three requirements of a prima facie case for the purposes of summary judgment.

YP challenges the fourth element on the grounds that YP did not hire any Tel Reps until after September 30, 2010.  YP Mot. 22.  Instead, YP hired twelve Tel Reps a month later, on October 25, 2010.  *Id.*  Given the temporal proximity between plaintiffs' applications in the two months prior to September 30, 2010, and YP's decision to hire other persons as Tel Reps by October 25, 2010, a reasonable jury could fairly compare the two groups of applicants.  Such a comparison would serve as prima facie evidence of discrimination that those hired as Tel Reps were significantly younger, with an average age of 42.92, than plaintiffs, whose average age was

51.75.  SUF 70; Pls.' Opp'n 17; YP Reply 11–12; Simpson Decl., Ex. 14-D.  Plaintiffs also point

to ageist comments from Larry Lacko, who managed YP's staffing department, and allegedly told

Riddick "[YP] want[s] younger workers" who, in his opinion, were the "best of the best."

Riddick Decl. ¶ 21.  A reasonable juror could infer discriminatory motives from YP's conduct.

Because YP does not at this stage assert a legitimate nondiscriminatory reason for its decision to

hire other younger workers, summary judgment is not appropriate as to plaintiffs' claims

regarding their applications for the Tel Rep position.

2.      ASOM (Hardy, Riddick)

Plaintiffs Hardy and Riddick allege age discrimination based on YP's failure to

hire them for the position of ASOM.  Pls.' Opp'n 20–23.

YP does not dispute the first three elements of a prima facie case, that Hardy and

Riddick were members of a protected class, applied for and were qualified for the ASOM

position, and were denied employment.  YP again argues, however, that because it did not hire

anybody for the ASOM position, plaintiffs cannot fully establish a prima facie case.  YP Mot.

19-20.  Plaintiffs do not dispute that YP "cancelled" the ASOM position in October 2010 as part

of a fourth quarter hiring freeze.  Instead, they point to the interim hiring of Scott MacDonald, a

younger male, in January 2011 and YP's decision to make his position permanent in 2012.  A

reasonable juror could consider YP's cancellation of the position and decision to hire a younger

male soon after interviewing Hardy as evidence of discrimination.  In addition, Larry Lacko's

ageist comments compound plaintiffs' prima facie showing because Lacko managed YP's

staffing department and was a recruiter for the ASOM position.  Taken together, plaintiffs'

evidence satisfies the fourth element of a prima facie case of age discrimination at this stage of

the case.

In offering a legitimate, nondiscriminatory reason for its decision, YP argues

MacDonald was "vastly more qualified" than plaintiffs, YP Mot. 20, a claim plaintiffs vigorously

dispute, Pls.' Opp'n 22.  As plaintiffs point out, when YP hired MacDonald he had approximately

eight years of experience with YP, Bis Decl., Ex. B (MacDonald Resume), compared to Hardy's

approximately thirty-nine years and Riddick's twenty years, Hardy Decl. ¶¶ 4–10, Ex. K1 (Hardy

18

Resume); Riddick Decl. ¶¶ 7 –12, Ex. J1 (Riddick Resume).  In addition, MacDonald had no more than three years of management experience, whereas Hardy had sixteen years and Riddick had five.  *See* MacDonald Resume; Hardy Resume; Riddick Resume.  YP also argues only MacDonald had sales-focused experience, but both Hardy and Riddick did, too.  *Id.*  YP finally argues Hardy's experience as Telemarketing Sales Manager from 1984 to 1995 was not recent enough.  YP Mot. 20.  Considering Hardy's strong performance in the position over eleven years and her fifty-two merit-based awards, a reasonable juror could find otherwise.  In sum, a reasonable juror could find YP harbored discriminatory reasons for choosing MacDonald over plaintiffs, in the short and longer term.  Summary judgment is not warranted as to Hardy's and Riddick's claims regarding their applications for the ASOM position.

### 3.    ASM (Lynn)

Lynn alleges age and sex discrimination for YP's failure to hire her for the ASM position.  Pls.' Opp'n 23–24.

YP does not dispute that Lynn satisfies a prima facie case of age and gender discrimination.  Lynn was forty-five years old and qualified at the time of her application, but YP denied her the job and filled the vacancies with candidates who were all outside one or both of her protected classes: Robert Levin (male); Luis Pantoja (male, 37); and Shauna Emery (female, 36).  Kristiansen Dep. 770–71.  Lynn also can point to Lacko's ageist comments to support her case.

YP counters that Lynn cannot show YP's nondiscriminatory reason—relative qualifications of candidates—was pretext for discrimination.  The parties dispute whether the persons hired were more qualified than Lynn.  As noted above, Lynn had eighteen years of experience with YP, including six years in a managing role.  Lynn Decl. ¶¶ 4–8.  YP acknowledges the relevance of Lynn's work as a Market Manager for another company.  Kristiansen Dep. 112; Lynn Decl., Ex. L1 (Lynn Resume).  In contrast, Emery, the only female hired as an ASM, had no management experience with YP; Levin had only one and a half years of management experience as a trainer with YP; and Pantoja had three years of management experience with YP.  Kristiansen Dep. 773–75.  YP contends Lynn's YP experience was

irrelevant to her ASM application because, unlike the three successful candidates, she lacked

sales experience.  YP Reply 10.  However, Lynn's four years in the Market Manager position

included training sales force staff.  *See* Lynn Resume.  A reasonable jury could conclude Lynn

was more qualified than those hired and that YP's stated reason for choosing younger,

predominantly male candidates was mere pretext.  Summary judgment is not appropriate as

Lynn's claims regarding her application for the ASM position.

In sum, the court DENIES YP's motion for summary judgment as to plaintiffs'

claims regarding their applications to fill the three positions discussed above: Tel Reps, ASOM,

and ASM.

VI.     Remaining Issues

A.     Plaintiffs' Abandoned Theories

Although "summary judgment is not properly granted simply because there is no

opposition," *Atilano v. Cnty. of Butte*, 2008 WL 4078809, at *6 (E.D. Cal. Aug. 29, 2008) (citing

*Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir.1993)), a court "has no obligation to search

the entire case file for evidence that establishes a genuine issue of fact when the nonmovant

presents inadequate opposition to a motion for summary judgment," *Fair Hous. Council of*

*Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136–37 (9th Cir. 2001).

Plaintiffs do not address three aspects of YP's motion for summary judgment.

First, plaintiffs do not defend their claims regarding applications to fill several other positions.

*See* YP Mot. 14–16 (moving for summary judgment as to all non-YP positions); *id.* at 16–24

(moving for summary judgment as to remaining YP positions of Sales Support Manager,

Manager of Credit & Collection, Supervisor Assistant, Field Sales Collector, and Customer

Associates).  In particular, plaintiffs do not respond to YP's evidence that plaintiffs either never

applied to these other YP positions or applied outside the limitations period.  *Compare* YP Mot.

16–24 (citing, in part, deposition testimony from each plaintiff) *with* Pls.' Opp'n.

Second, plaintiffs do not defend their claims regarding compensation.  *See* FAC

¶ 30 (alleging sex-based discrimination as to compensation); YP Mot. 24–25.  For example,

plaintiffs do not address YP's evidence suggesting that plaintiffs' claims related to unequal pay

are time-barred. Finally, plaintiffs do not defend their claims of discriminatory "policies and practices," "terms and conditions," and "hostile work environment." *See* FAC ¶ 30. In particular, plaintiffs are silent in the face of YP's contention that plaintiffs do not rely on these claims. YP Mot. 25–26.

In light of plaintiffs' failure to respond to YP's arguments, the court finds plaintiffs have abandoned these claims. *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1026 (9th Cir. 2009) (party abandoned theory by not addressing it at summary judgment); *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 (9th Cir. 2005) (per curiam) (noting party abandoned claims it did not defend in summary judgment opposition). Given YP's evidence in support of each argument, the court further finds the lack of a genuine dispute as to each claim and that summary judgment on each claim is warranted. *See, e.g.*, *Campbell v. Feld Ent., Inc.*, 75 F. Supp. 3d 1193, 1204 (N.D. Cal. 2014) (finding summary judgment appropriate against claims nonmovant's briefs ignored).

B.      Plaintiffs' Rule 56(d) Request

Plaintiffs ask the court, if it is inclined to find for YP on summary judgment, to deny YP's motion under Federal Rule of Civil Procedure 56(d) so plaintiffs may obtain additional discovery. Pls.' Opp'n 25; Pairavi Decl. ¶¶ 10–23.

Under Rule 56(d), the court may deny or continue a motion for summary judgment if an opposing party can show that "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The party opposing summary judgment "must identify the specific facts that further discovery would reveal and explain why these facts would preclude summary judgment." *Tatum v. San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006). More specifically, the party "must show (1) that [he] ha[s] set forth in affidavit form the specific facts that he hope[s] to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *State of California v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998) (citing Fed. R. Civ. P. 56(d)).

To the extent the court has denied YP's motion, plaintiffs' request is moot. As to the portion of YP's motion the court has indicated it will grant, plaintiffs have not explained how

additional discovery would address the gaps in their theories.  Opp'n 25; Pairavi Decl. ¶¶ 10–23.
Plaintiffs neither explain how additional discovery would show they applied to the other YP
positions—information plaintiffs themselves would presumably possess—nor address how such
discovery would support their discriminatory compensation, policies and practices, terms and
conditions, and hostile work environment theories.  Thus, the court denies plaintiffs' request.

## VII.  SUMMARY JUDGMENT CONCLUSION

The court DENIES YP's motion for summary judgment on plaintiffs' claims of
age discrimination tied to YP's relocation of ASAs and on plaintiffs' failure-to-hire claims of age
or sex discrimination regarding the positions of Tel Reps, ASOM and ASM.

The court GRANTS summary judgment as follows: on plaintiffs' failure-to-hire
claims involving their applications to any non-YP position or to any YP positions other than the
Tel Reps, ASOM or ASM position; plaintiffs' discriminatory compensation claims; and
plaintiffs' claims of discriminatory "policies and practices," "terms and conditions," and "hostile
work environment."

## VIII.  PLAINTIFFS' MOTION FOR SANCTIONS

Prior to the summary judgment hearing, plaintiffs moved for sanctions to address
YP's discovery conduct that plaintiffs say deprived them of a full summary judgment record.  *See
generally* Pls.' Mot.  Plaintiffs' motion centrally relies on YP's responses to plaintiffs' Request
for Production Number 60.  *Id.*  The court reviews the back-and-forth between the parties
regarding this Request before turning to plaintiffs' argument that YP could have disclosed more.

### A.  Plaintiffs' Request for Production No. 60

On July 14, 2015, plaintiffs served their Requests for Production of Documents on
YP.  Pairavi Sanctions Decl. ¶ 5, ECF No. 111-1.  Specifically, Request for Production No. 60
sought "[a]ny and all DOCUMENTS that RELATE OR PERTAIN to any and all job openings in
YOUR Northern California offices from January 1, 2009 to January 1, 2013, including but not
limited to any job flyers, descriptions and/or postings."  *Id.*; *see also id.* Ex. A, ECF No. 111-2.
On October 9, 2015, YP objected to several of plaintiffs' requests as irrelevant, overly broad, and
violative of third party privacy rights. *Id.* ¶ 6; *see also id.* Ex. B., ECF No. 111-3.

On July 8, 2016, plaintiffs sent "meet and confer" letters to YP responding to YP's objections. *Id.* ¶ 7; *see also id.* Ex. C, ECF No. 111-4. Plaintiffs argued the request was relevant, not burdensome, and justifiable even in light of third party privacy interests. *Id.* Ex. C at 22. Plaintiffs warned they would file a motion to compel if they did not receive a response by July 20, 2016. *Id.* Ex C. at 2. On July 15, 2016, after the parties' telephonic "meet and confer," YP sent an e-mail to plaintiffs memorializing the discussion and agreeing to provide supplemental responses. Bouayad Decl. Ex. A, ECF No. 114-1. YP agreed to produce "any and all existing 'job fliers, descriptions and or job/postings' for all clerical job openings in Northern California from January 1, 2009 to the date of Plaintiffs' separation from employment (9/30/10)." Bouayad Decl. Ex. A. YP continued, however, to object to the breadth of plaintiffs' request: "During our telephonic meet and confer you articulated your desire for documents related to all Northern California jobs from 1/1/09 to 1/1/13; however, you failed to articulate how such a broad request was reasonable. If you maintain that you are still entitled to said documents for said time period, we invite you to provide us with any and all case law that supports your position." *Id.* On August 8, 2016, YP supplemented its response to Request for Production No. 60 as promised and restated each of its prior objections. Pairavi Sanctions Decl. ¶ 8; *see also id.* Ex. D at 16, ECF No. 111-5. YP also explained "YP has no documents in its possession, custody and/or control regarding job openings for clerical positions inNorthern California offices of Pacific Bell Directory (PBD) from January 1, 2009, to the date of Plaintiff's [sic] separation from employment (9/30/10)." *Id.*

On November 7, 2016, plaintiffs sent another "meet and confer" letter to YP regarding its supplemental response. Pairavi Sanctions Decl. ¶ 10; *see also id.* Ex. E, ECF No. 111-6. Plaintiffs sought to define the scope of production and discuss which positions and what time period the request necessarily covered. *Id.* Ex. E. On November 16, 2016, YP's counsel emailed that YP was "unable to locate" further responsive documents to Request for Production No. 60. Pairavi Sanctions Decl. ¶ 11; *see also id.* Ex. F, ECF No. 111-7. Within a few days, on November 21, 2016, YP served its written second supplemental responses, which declared, "[u]pon further investigation and reasonable inquiry, besides those documents

previously produced, Defendant YP has no documents in its possession, custody and/or control responsive to this request." Pairavi Sanctions Decl. ¶ 12; *see also id.* Ex. G, ECF No. 111-8.

The court's operative amended scheduling order closed all discovery on November 28, 2016. ECF No. 85.

B.    Plaintiffs' Argument that YP Controlled Additional Information

Plaintiffs argue YP has now filed declarations with the court revealing it had greater access to relevant documents than its discovery responses suggested. *See* Pls.' Mot. 15-21. Plaintiffs point specifically to three declarations YP filed in support of its motion for summary judgment, signed by Tanya Strass, Debi Kristiansen, and Jennifer Reyes. *Id.*

1.    Strass Declaration

As noted above, Strass is currently "an Analyst, HRIS (Human Resources Information Systems), within the Benefits & HR Services group for YP." Pairavi Sanctions Decl. Ex. W (Strass Decl.) ¶ 2, ECF No. 111-24. Strass explains she is occasionally required to retrieve personnel data from before March 17, 2013, the date YP assumed responsibility from AT&T for the payroll of YP's employees. *Id.* In these instances, even though AT&T's human resources management system called elink maintains the data, Strass contacts AT&T payroll operations to request it. *Id.* The data include each employee's ATTUID (a unique internal employee identifier YP gives each employee when hired), hire date, termination date, job title, employment type, wage information, bargaining unit, work location (i.e., city, state, address and zip code), supervisor name, date of birth and years of service. *Id.* Strass also generated several spreadsheets of personnel data for YP employees who worked as Customer Associates, Advertising Support Analysts, Tel Reps, and Design Center Managers using the elink system. *See id.* ¶¶ 4–7 & Exs. A–D.

2.    Kristiansen Declaration

As YP's designated Person Most Qualified (PMQ), Kristiansen has been deposed repeatedly in this case, and also submitted a declaration in support of YP's motion for summary judgment. *See* Pairavi Sanctions Decl. Ex. X (Kristiansen Decl.), ECF No. 111-25. Kristiansen worked for a subsidiary of YP's predecessor entity, PBD, before plaintiffs' separation, and her

duties included managing and "overseeing various realignments, hirings, layoffs, transfers and consolidations" at PBD. *Id.* ¶ 2. Most relevant here, Kristiansen explains she repeatedly queried the JOBS recruitment software system for information about YP positions at the time of plaintiffs' applications. *Id.* ¶¶ 13–16. Kristiansen does not indicate the dates of her JOBS system queries.

### 3. Reyes Declaration

Reyes is a Senior Quality M&P Process Manager for Talent Acquisitions at AT&T Services, Inc. Pairavi Sanctions Decl. Ex. Y (Reyes Decl.), ECF No. 111-26. Her duties include "responding to employee information requests from . . . the various AT&T family of companies." *Id.* ¶ 2. As Reyes explains, "[w]hen any employee at one of the AT&T family of companies applies to a job requisition posted in either JOBS (for non-management jobs) or Career Path (for management jobs), their application information is stored in a system known as TALEO in the ordinary course of business." *Id.* ¶ 3. In October 2013, Reyes was asked to run a search of TALEO to determine whether plaintiffs had applied to various positions at YP. *Id.* ¶ 4. Reyes does not indicate who asked her to perform the search.

### C. The Court's Power to Sanction

A court may sanction misconduct during discovery under Federal Rule of Civil Procedure 37 and under the court's inherent powers. *Haeger v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233, 1243 (9th Cir. 2016).

### 1. The Federal Rules

Federal Rule of Civil Procedure 37(c)(1) "forbid[s] the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008). The Rule provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

> In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

(B) may inform the jury of the party's failure; and

(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1). The party facing sanctions bears the burden of proving its failure to disclose the required information was substantially justified or is harmless. *Torres v. City of L.A.*, 548 F.3d 1197, 1213 (9th Cir. 2008). If a court's Rule 37 sanction amounts to a dismissal of a claim, such as through preclusion of evidence that is fatal to a claim, a court must consider whether the claimed noncompliance involved willfulness, fault, or bad faith, and also consider the availability of lesser sanctions. *R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1247 (9th Cir. 2012).

Plaintiffs argue YP did not meet its disclosure obligations under Rules 26 and 34 during discovery. Federal Rule of Civil Procedure 26(a)(1)(A) requires a party to make certain initial disclosures to other parties "without awaiting a discovery request." *R & R Sails, Inc.*, 673 F.3d at 1245–46. Specifically, subsection 26(a)(1)(A)(ii) requires a party provide "a copy— or a description by category and location—of all documents . . . that it has in its possession, custody, or control and may use to support its claims." Fed. R. Civ. P. 26(a)(1)(A)(ii). Rule 34, regarding requests for production, similarly requires a party to produce only items within the party's "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "Control" is "the legal right to obtain documents upon demand." *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999) (citing *Int'l Union of Petroleum and Industrial Workers, AFL-CIO* (*Int'l Union*), 870 F.2d 1450, 1452 (9th Cir. 1989)). Rule 26(e) further requires a party "who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission" to supplement or correct its disclosure or response in certain circumstances. Fed. R. Civ. P. 26(e)(1). The disclosing party must "supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been

made known to the other parties during the discovery process or in writing." Fed. R. Civ. P.

26(e)(1)(A).

2. The Court's Inherent Powers

"It has long been understood that [c]ertain implied powers must necessarily result

to our Courts of justice from the nature of their institution, power which cannot be dispensed with

in a Court, because they are necessary to the exercise of all others." *Chambers v. NASCO, Inc.*,

501 U.S. 32, 43 (1991).  A court may rely on its inherent powers even if the federal rules would

sanction the same conduct.  *Haeger*, 813 F.3d at 1243 ("This inherent power is not limited by

overlapping statutes or rules.").

Before sanctioning under its inherent power, "the court must make an express

finding that the sanctioned party's behavior "constituted or was tantamount to bad faith." *Leon v.

IDX Sys. Corp.,* 464 F.3d 951, 961 (9th Cir. 2006).  Bad faith may be found in a variety of

conduct stemming from "a full range of litigation abuses," *id.* (citing *Chambers*, 501 U.S. at 47),

including "delaying or disrupting the litigation," *Primus Auto. Fin. Servs., Inc. v. Batarse*,

115 F.3d 644, 648 (9th Cir. 1997), or going to extraordinary measures to destroy evidence, *Leon*,

464 F.3d at 961.  "The bad faith requirement ensures that the district court's exercise of its broad

power is properly restrained, and 'preserves a balance between protecting the court's integrity and

encouraging meritorious arguments.'" *Leon*, 464 F.3d at 961 (quoting *Primus Auto. Fin. Servs.,

Inc.*, 115 F.3d at 649).  Additionally, if sanctions are monetary, the amount must be "reasonable."

*Id.* (citing *Brown v. Baden (In re Yagman)*, 796 F.2d 1165, 1184 (9th Cir.), *as amended by*

803 F.2d 1085 (1986).

D. YP's Conduct

Plaintiffs argue YP withheld personnel data for job openings posted around the

time or after plaintiffs' separation from YP. *Id.* at 14–15.  Plaintiffs ask for judgment in their

favor or, in the alternative, for a jury instruction, an adverse inference, preclusion of evidence, or

monetary sanctions. *Id.* at 21–25.

The court finds sanctions unwarranted for three reasons.  First, although plaintiffs

requested documents before the discovery cut-off, their request followed  several, long periods of

unexplained delay.  Plaintiffs filed this case on August 2, 2012.  ECF No. 1.  It was not until July 14, 2015, nearly three years later, that plaintiffs served their first requests for production.  Pairavi Sanctions Decl. ¶ 5.  Although YP responded to plaintiffs' request in October 2015, plaintiffs did not take any further action until July 8, 2016, nearly nine months later.  *Id.* ¶ 7.  At their meet-and-confer later that month, YP continued to object to the breadth of plaintiffs' request, yet plaintiffs never filed a motion to compel.  Bouayad Decl. Ex. A.  Plaintiffs argue that, at least after August 8, 2016, when YP's supplemental responses explained for the first time that it had no further documents in its "possession, custody and/or control," there were apparently no documents to compel.  Pairavi Sanctions Decl. ¶ 8; *see also id.* Ex. D.  Nonetheless, plaintiffs do not explain the several, lengthy gaps in the prosecution of their case.

Second, plaintiffs do not demonstrate their request for production was within the proper scope of discovery.  Plaintiffs' Request for Production Number 60 sought "[a]ny and all DOCUMENTS that RELATE OR PERTAIN to any and all job openings in YOUR Northern California offices from January 1, 2009 to January 1, 2013, including but not limited to any job flyers, descriptions and/or postings."  Pairavi Sanctions Decl. ¶ 5; *id.* Ex. A.  YP has repeatedly objected to the breadth of this request, arguing that job openings available long after plaintiffs' separation on September 30, 2010 are not at issue in this case.  Pairavi Sanctions Decl. ¶ 6; *id.* Ex. B; Bouayad Decl. Ex. A; Pairavi Sanctions Decl. ¶ 8; *id.* Ex. D.  Plaintiffs respond that a central allegation in this case is that YP "illegally denied promotional opportunities to Plaintiffs by not only failing to post job opportunities during the two-month window they had to find a job, but also deliberately postponing the posting of available positions until after Plaintiffs separated from YP."  Pls.' Reply 2–3.  However, a request for documents pertaining to openings more than two years after plaintiffs' separation stretches the limits of even plaintiffs' theory.  Although the scope of discovery is broad, it nevertheless has "ultimate and necessary boundaries."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).  At the very least, the court finds YP's consistent objection is sufficiently reasonable to undermine allegations of YP's bad faith.

Third, plaintiffs do not meet their burden of showing the documents responsive to their request are within YP's "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Plaintiffs' Request for Production Number 60 sought documents relating to job openings at the time of plaintiffs' separation. As Kristiansen and Reyes explain, job openings for non-managerial positions were maintained in the JOBS recruitment software system. Kristiansen Decl. ¶¶ 13–16; Reyes Decl. ¶ 3. As YP explained at hearing, although Kristiansen accessed and queried the JOBS database in response to precursor proceedings before the federal Equal Employment Opportunity Commission (EEOC) in 2010, Kristiansen lost access to JOBS before plaintiffs' July 2015 request for production. *See also* Kristiansen Decl. ¶¶ 2, 13 (explaining she accessed the JOBS system through her job as a PBD manager, which ended in 2012). Also, Reyes is not a YP employee and never indicates she had JOBS access. Rather, she accessed the TALEO system, which tracks applications to job postings. Reyes Decl. ¶ 3. Thus, to the extent plaintiffs' request is limited to job postings, plaintiffs cite insufficient evidence that YP had "possession, custody, or control" of the JOBS system data at the time of or since plaintiffs' request.

In opposition to the sanctions request, YP construes plaintiffs' request even more broadly to seek information about applications for open positions. Opp'n 14. As Reyes explains, applications to posted positions in JOBS (for non-management jobs) or Career Path (for management jobs) are stored in TALEO in the ordinary course of business. Reyes Decl. ¶ 3. Plaintiffs argue Reyes' TALEO query, performed in response to a request in October 2013, demonstrates that YP had "control" over this data. Pls.' Mot. 20. There are two problems with plaintiffs' argument. First, Reyes does not say YP requested the query. Reyes works for AT&T Services Inc., her job responsibilities include performing these types of searches in response to requests from the "AT&T family of companies," and she performed the TALEO search here when AT&T Inc. was a party to this suit. *Compare* FAC (listing "AT&T" as a defendant) *with* Order November 3, 2015, ECF No. 67 (dismissing "AT&T, Inc." from this case). Since this case was filed, AT&T sold YP in May 2012. Kristiansen Decl. ¶ 7. So YP was not part of the "AT&T family of companies" at the time of plaintiffs' October 2013 request, if it ever was. And at hearing, YP's counsel confirmed that his firm requested Reyes's query while it was representing

AT&T Inc. in this case.  *See* ECF No. 5 (adding Mr. Simpson as counsel for AT&T Inc.); ECF No. 41 (adding Mr. Bouayad as counsel).  Thus, it is not at all clear that YP could have obtained these documents through discovery from YP after AT&T Inc.'s dismissal.  Even if YP could have obtained the TALEO documents somehow, the relevant test under Rule 34 is whether YP had "the legal right to obtain documents upon demand."  *Int'l Union*, 870 F.2d at 1452.  The Ninth Circuit has specifically rejected plaintiffs' flexible interpretation of "control."  *In re Citric Acid Litig.*, 191 F.3d at 1107 (rejecting a "practical-ability-to-obtain-documents test").  Rather, the Circuit has agreed that a party to litigation does not have legal control over documents a nonparty maintains where the two are separate entities under the law and have no contract for obtaining the records on demand.  *See Int'l Union*, 870 F.2d at 1452 (international union did not have "control" over records local affiliated unions kept); *In re Citric Acid Litig.*, 191 F.3d at 1107 (C&L–US did not have "control" over documents C&L–Switzerland maintained).  Here, YP and Reyes' employer, AT&T Services Inc., are distinct legal entities, only one of which is a party to this suit, and plaintiffs do not explain how YP could legally demand the records.  For these reasons, plaintiffs have not met their burden of proving YP has "control" over the relevant documents.  *Int'l Union*, 870 F.2d at 1452; *Hayles v. Wheatherford*, 2:09-CV-3061 JFM PC, 2010 WL 4739484, at *1 (E.D. Cal. Nov. 16, 2010).  Sanctions are not warranted.

IX.    CONCLUSION

As noted above, the court DENIES YP's motion for summary judgment on plaintiffs' claims of age discrimination tied to YP's relocation of ASAs and on plaintiffs' failure-to-hire claims of age or sex discrimination regarding the positions of Tel Reps, ASOM and ASM.

The court GRANTS summary judgment as follows: on plaintiffs' failure-to-hire claims involving their applications for any non-YP position or any YP positions other than the Tel Reps, ASOM or ASM positions; plaintiffs' discriminatory compensation claims; and plaintiffs' claims of discriminatory "policies and practices," "terms and conditions," and "hostile work environment."

/////

/////

The court DENIES plaintiffs' motion for sanctions.

This order resolves ECF Nos. 100 and 111.

IT IS SO ORDERED.

DATED: May 18, 2017.

_____
UNITED STATES DISTRICT JUDGE